UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02458-SEB-TAB |
| | ) | |
| RANDALL BUCK Officer, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff James Smith initiated this suit on September 17, 2021, charging Defendant Randall Buck, a police officer with the Indianapolis Metropolitan Police Department (IMPD), with violations of Mr. Smith's constitutional rights under the Fourth and Fourteenth Amendments, made actionable by 42 U.S.C. § 1983. Now before the Court is Officer Buck's Motion for Judgment on the Pleadings [Dkt. 10], filed on January 4, 2022, pursuant to Federal Rule of Civil Procedure 12(c). Officer Buck seeks dismissal of Mr. Smith's claims on grounds that they are barred by the two-year statute of limitations applicable to § 1983 claims.

For the reasons set forth below, Defendant's motion is GRANTED IN PART and DENIED IN PART.

**Factual Background**

*I. Initial Home Search and Arrests*

On April 3, 2019, multiple IMPD officers, including Officer Buck, arrived at Mr. Smith's residence located at 5855 Bonnie Brae Street in Indianapolis, Indiana.  Mr. Smith shared the home with roommates Bryson Dye and Paul Florien.  Mr. Florien was at that time serving a home detention sentence, the terms of which permitted the officers to conduct periodic home visits.[1]  When the officers arrived on April 3 to conduct such a visit, only Mr. Florien and Mr. Dye were at home.  IMPD officers searched the residence and located various items of contraband throughout the home, including marijuana, firearms, and $16,954.00 in United States currency.  Both Mr. Florien and Mr. Dye were arrested at the scene and charged with various felonies. Compl. ¶¶ 14–15.[2]

Several of the items discovered by law enforcement during the April 3 search, including a loaded firearm, a small amount of marijuana, and $4,500 in cash, were seized by IMPD Officer Robert Cosler from a basement bedroom that was identified by law enforcement as belonging to Mr. Smith. *Id.* A few weeks following the search, on April 25, 2019, officers applied for and obtained a warrant for Mr. Smith's arrest based on a probable cause affidavit filed on that same date by Officer Cosler.  In that affidavit, Officer Cosler incorrectly averred that Mr. Smith was one and the same as a James Smith out of Philadelphia, Pennsylvania, who had prior felony drug distribution convictions in Pennsylvania.  Based on the information contained in Officer Cosler's probable cause affidavit, Plaintiff James Smith was charged with unlawful possession of a firearm by a

---

[1] Mr. Florien was sentenced to home detention under Marion County Cause Number 49G21-1608-F2-030229.
[2] Mr. Florien was charged under Marion County Cause Number 49G21-1904-F6-013524. Mr. Dye was charged under 49G21-1904-F5-013518.

serious violent felon and two drug-related offenses.³  Mr. Smith was served with the warrant and arrested on May 18, 2019.

In his complaint, Mr. Smith alleges that the April 25, 2019 probable cause affidavit Officer Cosler submitted to secure the warrant for his arrest (the "Cosler Affidavit") was identical to the probable cause affidavits that had previously been prepared and submitted in support of the criminal charges filed against Mr. Dye and Mr. Florien, respectively.⁴  *Id.* ¶ 19.  In the Cosler Affidavit, Mr. Smith is mentioned four times: (1) in connection to the "IPL bill" addressed to "James Smith" at the house's address; (2) as the registered owner of a black 2005 Chrysler 300 parked in the driveway; (3) in response to a "check for prior convictions" which revealed two prior felony convictions for a "James Smith" in Pennsylvania from 2001 and 2013; and (4) in a concluding notation stating that he was not present at the scene at the time of the search. *See* Dkt. 13-1.

## II. Forfeiture Action and Location of the Money

On April 9, 2019, following Mr. Dye's and Mr. Florien's arrests, but prior to Mr. Smith's arrest, the State of Indiana filed a Complaint for Forfeiture (the "Forfeiture Action") in the Marion Superior Court to initiate a forfeiture action for the $16,954.00 in

---

³ The unlawful firearm possession charge was subsequently dismissed after Mr. Smith's attorney requested a fingerprint comparison and it was determined that Plaintiff had been misidentified in the probable cause affidavit and did not have a prior felony conviction.

⁴ Although Mr. Smith alleges that all three iterations of the Cosler Affidavit are identical, he has made only the copy filed in his own criminal case available to the court. His claims rest on the content of that probable cause affidavit being identical to those filed in Mr. Florien's and Mr. Dye's cases.

United States currency that had been seized from the residence on April 3, 2019, which amount included the $4,500 seized from Mr. Smith's bedroom.[5] *Id.* ¶ 26. Mr. Dye and Mr. Florien were both named in and given notice of the Forfeiture Action, but Mr. Smith alleges that he was neither named in the complaint as an interested party nor given notice of the litigation. *Id.* ¶ 28.

Attached to the Forfeiture Action is a probable cause affidavit signed by Officer Buck dated April 8, 2019 (the "Buck Affidavit"). Dkt. 13-2. The Buck Affidavit does not include any reference to "James Smith," but is otherwise nearly identical to the Cosler Affidavit. The Buck Affidavit contains a reference to the IPL bill found by Officer Cosler in the basement bedroom, which the Cosler Affidavit listed as being addressed to "James Smith." The Buck Affidavit, however, lists the addressee as "Jason Smith." *Id.*

Both the Cosler Affidavit and the Buck Affidavit note that "$16,954 in cash was collected and sized [sic] by Officer McAfee and sent to IMPD forfeiture unit." Dkts. 13-1, 13-2. Additionally, both affidavits include a closing note that "Officer Faull and McAfee transported all the items to the IMPD Property Room to be held as evidence." *Id.* Mr. Smith alleges in his complaint that he believed based on this information that the money was at that time being held as evidence in connection with his pending criminal charges. Compl. ¶ 29.

On September 19, 2019, Zachary Rosenbarger of the Marion County Prosecutor's Office filed a Motion for Default Judgment in the Forfeiture Action on behalf of the

---

[5] The forfeiture action was titled *State of Indiana v. Bryson Dye, Paul Florien, and $16,957.00 in U.S. Currency*, filed under Marion County Cause Number 49D11-1904-MI-014307.

4

State, which motion was granted on September 23, 2019. Dkt. 16-3. Mr. Smith claims that, due to never receiving initial notice of the forfeiture action, he "also had no knowledge of the default judgment." Compl. ¶ 39.

### III. Dismissal of Mr. Smith's Criminal Charges and His Request for Return of Property

Mr. Smith asserts that, though the firearm-related charge against him was dropped after a fingerprint comparison that confirmed he had no prior criminal history, *id.* ¶ 22, other criminal charges stemming from the April 3, 2019 search of his residence remained pending until October 6, 2020, eighteen months after the search was conducted. *Id.* ¶ 40.

Shortly after the final criminal charges against him were dismissed, Mr. Smith "attempted to retrieve his money from the Indianapolis Metropolitan Police Department." *Id.* ¶ 41. After his efforts proved unsuccessful, Mr. Smith retained counsel who filed on June 23, 2021, a Motion to Release Personal Property with the criminal court. *Id.* ¶ 45. The criminal court granted this motion on July 26, 2021. Dkt. 16-4. Mr. Smith alleges that his counsel "immediately faxed a copy of the order to IMPD's forfeiture unit." Compl. ¶ 48. On August 17, 2021, IMPD's forfeiture unit contacted Mr. Smith's counsel and informed him "that they no longer possessed the funds and referred counsel to the prosecutor's office." *Id.* ¶¶ 49–52. Mr. Smith maintains that this call was when his counsel first learned that the funds had been seized in the Forfeiture Action. *Id.* ¶ 53.

On September 3, 2021, seventeen days after learning of the forfeiture, Mr. Smith filed a Motion to Intervene and a Motion to Set Aside Default Judgment in the Forfeiture Action, both of which the state court judge denied on September 9, 2021. Dkt. 16-3;

Compl. ¶¶ 54–56. Eight days after these motions were denied, on September 17, 2021, Mr. Smith initiated this suit against Officer Buck for violations of Mr. Smith's constitutional rights under the Fourth and Fourteenth Amendments. Compl. ¶ 4. Specifically, Mr. Smith alleges that Officer Buck intentionally removed all references to "James Smith" from the probable cause affidavit filed in the Forfeiture Action in order to "fraudulently conceal" from him the fact that the Forfeiture Action had been filed.

## Legal Analysis

### I. Applicable Legal Standard

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the pleadings are closed, but early enough not to delay trial. We review motions for judgment on the pleadings under the same standard by which we review motions to dismiss for failure to state a claim under Rule 12(b)(6). *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007)). "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017); *see also National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987) ("A motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law."). As with a 12(b)(6) motion to dismiss, the Court views all well-pleaded facts as true and draws all reasonable inferences in the

light most favorable to the non-movant. *See Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020).

The pleadings include the complaint, the answer, and any written instruments appropriately attached as exhibits, such as affidavits and letters. *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)). While consideration of outside materials would usually require the Court to convert a Rule 12 motion to one for summary judgment under Rule 56, *see* Fed. R. Civ. P. 12(d), an exception exists "when a concededly authentic document is referred to in a complaint and is central to the plaintiff's claim." *Gillis v. Meisner*, 525 Fed. App'x 506, 509 (7th Cir. 2013); *see also Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (noting the court's "relatively liberal" approach to accepting "matters outside the pleadings" when authenticity is undisputed and the material is central to the complaint). Likewise, in ruling on a motion for judgment on the pleadings, the district court "may also take judicial notice of matters of public record." *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

Applying these legal principles here, in addition to the pleadings, we will consider the Cosler Affidavit and the Buck Affidavit, both of which are referenced in Mr. Smith's complaint and central to his claims and are attached to his response in opposition to Officer Buck's motion for judgment on the pleadings. We also take judicial notice of the four state court records (Chronological Case Summaries) attached to Officer Buck's reply.

## II. Discussion

Officer Buck has moved for judgment on the pleadings on grounds that Mr. Smith's § 1983 claims are time-barred, and no valid reason exists for tolling or extending the statute of limitations. In response, Mr. Smith argues that Officer Buck's fraudulent concealment tolls the limitations period in this case, rendering his claims timely.

It is well established that the statute of limitations is an affirmative defense, which complaints "need not anticipate or plead around." *Leavell v. Kieffer*, 189 F.3d 492, 494 (7th Cir. 1999). Although not ordinarily resolved at the pleadings stage, judgment at this stage may be appropriate if the plaintiff "pleads facts that show his suit is time barred or otherwise without merit," thus "plead[ing] himself out of court." *Tregenza v. Great American Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993), *cert denied*, 511 U.S. 1084 (1994); *see also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[W]hen all relevant facts are presented, the court may properly dismiss a case before discovery . . . on the basis of an affirmative defense."). In other words, unless the complaint alleges facts that establish "an ironclad defense," resolution of a limitations defense "must await factual development." *CP Stone Fort Holdings, LLC v. John Doe(s)*, No. 16 C 4991, 2016 WL 5934096, at *3 (N.D. Ill. Oct. 11, 2016) (quoting *Foss v. Bear, Sterns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005)). The burden is on Officer Buck to prove his entitlement to judgment on the basis of the statute of limitations defense.

Suits brought under § 1983, such as this one, are governed by the statute of limitations and tolling rules that states employ for personal-injury claims. *See Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). In Indiana, the applicable statute of

limitations period for personal injury claims is two years. IND. CODE § 34-11-2-4. The parties here agree that Mr. Smith's claims are subject to Indiana's two-year statute of limitations.

While the limitations period is determined by state law, federal law determines the accrual date of the cause of action. *See Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005). Normally, the accrual date of a cause of action is a question of fact; however, the Seventh Circuit has held that the accrual date may be determined as a matter of law "if the relevant facts are undisputed and they lead to but one conclusion." *See Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1370 (7th Cir. 1995). For § 1983 purposes, the claim accrues when the plaintiff knows or should know that his constitutional rights have been violated. *Logan v. Wilkins*, 644 F.3d 577, 581–82 (7th Cir. 2011) (citing *Behavioral Institute*, 406 F.3d at 929). Ultimately, to determine when a claim accrued, a court must first identify the injury and then determine when the plaintiff could have sued for that injury. *Id.*

Both parties appear to assume that the Fourth and Fourteenth Amendment claims asserted by Mr. Smith accrued on the date he first became aware, or, through the exercise of ordinary diligence, should have been aware that his property had been seized and/or that a forfeiture action had been initiated.  Based on this assumption, Officer Buck argues that, regardless of any fraudulent concealment alleged to have occurred, Mr. Smith should have been aware by April 25, 2019, at the latest, that his property had been seized and was subject to forfeiture, given the reference in the probable cause affidavit filed on that date in support of the criminal charges brought against him to law enforcement

having "sized [sic]" the currency and sent it to the IMPD forfeiture unit.  Officer Buck maintains that Mr. Smith's complaint, which was not filed until September 17, 2021, more than two years after April 25, 2019, is therefore untimely.

      To the extent the constitutional injury Mr. Smith alleges he suffered relates to the initial seizure of his property, we agree with Officer Buck that any such claim is untimely.  Seventh Circuit law is clear that § 1983 claims based on allegations of unlawful search and seizure "accrue[] immediately," *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010).  Here, the search of Mr. Smith's residence and the seizure of the currency occurred on April 3, 2019.  Even assuming that, due to his absence from the residence at the time of the search and seizure, he was not made aware of any potential violation of his constitutional rights on that day, he should have been aware of any constitutional injury arising from an allegedly unreasonable search and seizure at the latest by May 18, 2019, when he was served with the warrant and charged with offenses relating to items seized during the April 3, 2019 search.  Yet he did not file his complaint until September 17, 2021, more than two years later.  Accordingly, any § 1983 claim challenging the initial search and seizure of Mr. Smith's property is barred by the statute of limitations.[6]

      We are not persuaded, however, that Officer Buck is entitled to judgment on the pleadings with regard to Mr. Smith's constitutional challenge to the forfeiture process.  Although admittedly not a model of clarity, we understand Mr. Smith's complaint to

---

[6] Mr. Smith's argument that Officer Buck fraudulently concealed that fact that a forfeiture action had been initiated does not provide a basis for tolling the statute of limitations governing any claim related to the initial search and seizure.

allege that Officer Buck intentionally concealed from Mr. Smith the fact that his property was the subject of a forfeiture action, thereby violating Mr. Smith's due process rights by failing to provide him fair notice of the proceedings before depriving him of his property.[7] Courts analyzing claims alleging similar injuries, to wit, the permanent deprivation of seized property without sufficient notice of the forfeiture action, have held in a variety of contexts that such claims accrue, not at the time of the seizure, as Officer Buck maintains, but when the plaintiff "discovered or had reason to discover that his property had been forfeited without sufficient notice," to wit, "at the close of the forfeiture proceedings …." *Polanco v. United States Drug Enforcement Admin.*, 158 F.3d 647, 654 (2d Cir. 1998); *accord Kripp v. Luton*, 466 F.3d 1171, 1177 (10th Cir. 2006) (holding that § 1983 due process claim accrued "the date the state declared [the plaintiff's] property forfeited" or "the date [the plaintiff] became aware that his property had already been forfeited"); *Belton v. United States*, No. 07-C-925, 2008 WL 2273272, at *6 (E.D. Wis. June 2, 2008) (plaintiff seeking monetary relief for deprivation of property without due process "was injured when the forfeiture took place" and the claim for deprivation of property without due process of law accrued when "he learned of the

---

[7] To the extent Mr. Smith is intending to assert a fraudulent concealment claim, no such independent cause of action exists. *See Fikes v. Whitesell*, No. 4:11-cv-00034-TWP-WGH, 2011 WL 5025523, at *7 (S.D. Ind. Oct. 20, 2011) ("[F]raudulent concealment is not an independent cause of action."). Instead, fraudulent concealment operates as an equitable device, invoked by a plaintiff, "to estop a defendant from asserting the statute of limitations when the defendant has, either by deception or by violating a duty, concealed from the plaintiff material facts, preventing the plaintiff from discovering a potential cause of action." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) (citing *City of E. Chi. v. E. Chi. Second Century, Inc.*, 908 N.E.2d 611, 621–22 (Ind. 2009)).

11

forfeiture") (applying six-year statute of limitations then applicable to civil actions against the United States).

Mr. Smith alleges here that he had no notice that his property had been forfeited until August 17, 2021, when his attorney was informed by the IMPD forfeiture unit that it was not in possession of the funds. Officer Buck argues that Mr. Smith should be considered to have had constructive notice that his property was subject to forfeiture much earlier based on statements included in the April 25, 2019 probable cause affidavit filed in support of the criminal charges filed against him. However, under the line of cases discussed above, it is the date the property was forfeited (here, September 23, 2019) or the date on which the plaintiff should have known that the property had been forfeited (here, arguably August 17, 2021) when this type of due process claim accrues.

It is therefore not clear from the face of the complaint that Mr. Smith's § 1983 claim alleging deprivation of property without notice is time-barred. Assuming that either of the above dates is the date on which Mr. Smith's claim accrued, his complaint, which was filed on September 17, 2021, was filed within the two-year limitations period applicable to § 1983 claims. Accordingly, because the complaint does not "itself set forth everything necessary to satisfy the affirmative defense," *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005), as to Mr. Smith's constitutional challenge to the forfeiture procedure, we cannot at this time dismiss that claim on statute of limitations grounds.[8]

---

[8] We note that neither side addressed the case law discussed above or presented any developed argument in support of their respective positions regarding the accrual date of Mr. Smith's constitutional challenge to the forfeiture proceeding. We have therefore not been equipped by the parties to make a definitive determination regarding the date that claim accrued. Rather, we

12

### III.     **Conclusion**

For the reasons stated above, Officer Buck's Motion for Judgment on the Pleadings is <u>GRANTED IN PART</u> as to his § 1983 claim challenging the search and seizure of his property and <u>DENIED IN PART</u> as to his § 1983 claim challenging the forfeiture procedure.  The case shall proceed accordingly.

IT IS SO ORDERED.

Date: 8/29/2022

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

hold only that we cannot issue judgment based on a limitations defense at this stage of the litigation as to that claim as it is not "plain from the complaint that the statute of limitations defense is indeed a bar to the suit …." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010).  Officer Buck is therefore free to raise the limitations issue again at summary judgment if he chooses, at which point the Court can decide the issue on a complete factual record.

Distribution:

Brandon E. Beeler
Office of Corporation Counsel
brandon.beeler@indy.gov

Terrance Lamont Kinnard
KINNARD & SCOTT
tkinnard@kinnardlaw.net